**In re Virginia L. JEFFREY, Debtor.**

**Virginia L. Jeffrey, Plaintiff,**

v.

**United States of America, Internal Revenue Service, Defendant.**

**Bankruptcy No. 99–26533–JFK.**
**Adversary No. 00–2011–JFK.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 12, 2001.

Robert R. Druzisky, American Bankruptcy Centre, P.C., Pittsburgh, PA, for debtor.

Paul Skirtich, Assistant U.S. Attorney, Pittsburgh, PA, D. Brian Simpson, U.S. Department of Justice, Tax Division, Washington, D.C., for United States, Internal Revenue Service.

Richard Bedford, Ronda Winnecour, Pittsburgh, PA, Chapter 13 Trustee.

Julia L. Wahl, Special Assistant to the U.S. Attorney, Pittsburgh, PA, Attorney General of the U.S., U.S. Department of Justice, Civil Division, Bankruptcy Section, Washington, D.C., Civil Process Clerk, The U.S. Attorney, Pittsburgh, PA, United States Trustee.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Chief Judge.

### Background

Before the Court are Cross–Motions for Summary Judgment on Debtor's Amended Adversary Complaint to Determine the Secured Status of the Internal Revenue Service ("IRS") in Virginia L. Jeffrey's ("Debtor") property. Debtor asserts that the IRS' federal tax lien cannot attach to various items because the items are not "property"—or because she has no equity in the property. The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 2, 1999. The IRS filed its original proof of claim on October 8, 1999, and an amended proof of claim on November 3, 1999. The amended proof of claim was for two tax liens totaling $37,988.65 for taxes, penalties, and interest resulting from unpaid taxes for 1991, 1992, 1993, and 1995. The IRS filed Notice of Tax Lien on November 6, 1995, for the 1991–1993 deficiencies ($29,619.97) in Beaver, Pennsylvania, and on February 27, 1998, for the 1995 deficiency ($8,368.68) in Cuyahoga, Ohio. The Amended Complaint seeks to determine the secured status of the IRS tax liens on Debtor's residence, automobile, household goods, unliquidated medical malpractice claim, and pension.

The parties stipulated to the existence and present value of the Debtor's assets on July 31, 2000: residence, $38,000[2]; 1997 Dodge Neon, $5,560; 401(k) pension plan, $6,291.09; personal property, $2,630.00; and a medical malpractice claim, no value stipulated. On her Schedule B, the Debtor listed the approximate value of her medical malpractice claim as $10,000 and the IRS did not dispute this figure. However, the parties agreed that if the IRS is secured in the medical malpractice asset, its lien would attach to whatever Debtor collects on that claim. During oral arguments on November 3, 2000, the IRS conceded that there is no equity in Debtor's residence or vehicle to support its lien, but continued to

---

**1.** The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

**2.** This value was determined in an appraisal obtained by the Debtor on March 8, 2000, by order of this Court.

assert its secured position through a lien attached to her personal property, medical malpractice claim, and pension. There was no dispute between the parties as to whether the liens were perfected.

In her Complaint, the Debtor states that she has no equity in the household goods to which the IRS lien can attach. Additionally, the Debtor argues that her medical malpractice claim is contingent and unliquidated and, therefore, under Pennsylvania law is not property to which the IRS lien can attach. Furthermore, the Debtor claims that the terms of her ERISA-qualified pension do not subject it to attachment by creditors, including the IRS.

**Discussion**

■ In order to determine the secured status of the IRS in Debtor's property the court must first determine to what property the IRS lien can attach. Section 6321 of the Internal Revenue Code states that one who fails to pay taxes shall have a lien placed "in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321. The United States Supreme Court ruled that the extent to which a taxpayer has "property" or "rights to property" to which a tax lien can attach is determined by state law. *Aquilino v. U.S.*, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), *citing Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 585 (1940). Upon assessment, the lien survives until it is "satisfied or becomes unenforceable by reason of lapse of time," 26 U.S.C. § 6322, and

may attach "to all the property that the tax debtor subsequently acquired." *Glass City Bank v. U.S.*, 326 U.S. 265, 268, 66 S.Ct. 108, 90 L.Ed. 56 (1945), *quoting Graves v. Commissioner*, 12 B.T.A. 124, 133, 1928 WL 482 (1928).

■ The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Additionally, in determining the secured status of a lien the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..." 11 U.S.C. § 506(a). In order for Debtor to have her Chapter 13 plan confirmed by the court the plan must provide that "with respect to each allowed secured claim provided for by the plan ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ..." 11 U.S.C. § 1325(a)(5)(B)(ii). The IRS is secured to the extent of the present value of the property and Debtor must pay the entire amount through her Chapter 13 Plan.[3]

**I. Personal Property [4]**

■ Debtor argues that the IRS is unsecured in her personal property. The parties stipulated that Debtor's personal property has a value of $2,630.00. Debtor asserts that her personal property in-

---

**3.** If Debtor completes all plan payments and receives a discharge, her personal liability for the remaining tax debt will be discharged. However the lien remains viable until the obligation is paid in full. *In re Blackerby*, 208 B.R. 136, 141 (Bankr.E.D.Pa.1997).

**4.** During oral argument on November 3, 1999, the court granted the IRS' request to file a supplemental brief concerning household goods. The IRS filed a supplemental brief within the two weeks granted by the court, but the Debtor did not file a response to the IRS' brief.

cludes: household goods,[5] furniture, books, clothes, jewelry, pets, and a swimming pool. She acknowledges in her Brief in Support of Motion for Summary Judgment that exemptions provided in the Bankruptcy Code are irrelevant to the secured status of the IRS' tax lien in her personal property, but argues that the property is protected by the exemptions from levy provided in the Internal Revenue Code. Section 6334 of the Internal Revenue Code details property that is exempt from levy by the IRS. Specifically, subparts (a)(1) and (a)(2) exempt "Wearing apparel and school books" and "Fuel, provisions, furniture, and personal effects" from levy.

■ The Court of Appeals for the Ninth Circuit explained:

> The difference between a levy and a lien also suggests why a lien should still attach to property exempt from levy. A levy forces debtors to relinquish their property. It operates as a seizure by the IRS to collect delinquent income taxes.... The IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention.... A levy connotes compulsion or a forcible means of extracting taxes from 'a recalcitrant taxpayer.' ... A taxpayer subject to an IRS levy is provided certain protections such as notice

and an opportunity to pay the taxes due before the seizure....

> A lien, however, is merely a security interest and does not involve the immediate seizure of property. A lien enables the taxpayer to maintain possession of protected property while allowing the government to preserve its claim should the status of property later change. If, for instance, the debtor later sells his exempt personal property for cash, the IRS would be entitled to obtain such proceeds.

*U.S. v. Barbier,* 896 F.2d 377, 379 (9th Cir.1990) (citations omitted). *See also In re Blackerby,* 208 B.R. 136, 141 (Bankr. E.D.Pa.1997) (prepetition liens remain enforceable against property after personal liability is discharged). While Debtor is correct that § 6334 exempts certain property from levy, it does not preclude attachment of a valid tax lien, nor does it preclude payment of the claim through the bankruptcy. The only way Debtor's property will be released from the lien is through Debtor's payment to the IRS of the value of the encumbered goods.

## II. Medical Malpractice Claim

■ Debtor listed an unliquidated medical malpractice claim valued at approximately $10,000 on her Schedule B. She argues that it is exempt under 11 U.S.C. § 522(d)(11)(D)[6] or, in the alternative, that

---

**5.** In an answer to the IRS' Interrogatory # 8, Debtor disclosed that some of her household goods are encumbered by a purchase money security interest to Heilig–Meyers, leaving no equity to the extent of that loan. She also conceded in her answer to the IRS' Interrogatory that the lien attaches to property not encumbered by the purchase money security interest. This statement was not discussed in the briefs of either party or in any other proceeding before the court. Debtor separately itemized certain household goods (mattress, bed, lamps, and shelves) with a claimed value of $860.00 in her Schedule B. These items are over-encumbered by Heilig–Meyers' purchase money security on a total claim of

$1542.00. Thus, Heilig–Meyers has an unsecured claim of $682.00. As we understand the parties' stipulations, the IRS' lien attaches to different household goods as also separately itemized in Schedule B worth $2,630.00. If the $2,630.00 actually includes the $860 value of goods subject to the secured claim by Heilig–Meyers, then the IRS' lien attaches only to the value of $1,768.00. *See* note 3, *supra.*

**6.** 11 U.S.C. § 522(d)(11)(D) states, in part: "The following property may be exempted under subsection (b)(1): ... (11) The debtor's right to receive, or property that is traceable to—(D) a payment, not to exceed $16,150, on

Debtor's medical malpractice claim is not property under applicable Pennsylvania law and, therefore, the IRS cannot attach a tax lien.

The argument that the medical malpractice claim is exempt from attachment by a tax lien has no merit under federal bankruptcy law. Section 522(c)(2)(B) of the Bankruptcy Code states, in part:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, . . . before the commencement of the case, except—
> (2) a debt secured by a lien that is—. . .
> (B) a tax lien, notice of which is properly filed . . .

Notice of the tax liens were filed in the Beaver County Prothonotary's Office for the 1991, 1992, and 1993 tax deficiencies on November 6, 1995, and in the Office of the Recorder of Cuyahoga County for the 1995 tax deficiency on February 27, 1998, and Debtor does not assert that these filings are improper.

The Debtor relies on Pennsylvania case law dealing with divorces to support her argument that the medical malpractice claim is not property to which the IRS lien can attach. The Debtor asserts the Pennsylvania Superior Court ruled on this issue in *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871 (1987), *appeal denied*, 517 Pa. 631, 539 A.2d 811 (1988), and in *Hurley v. Hurley*, 342 Pa.Super. 156, 492 A.2d 439 (1985).[7] These cases stand for the proposition that, under the Pennsylvania

Divorce Code as it existed at the time, property acquired after separation is not *marital* property. In *Hurley*, the wife's personal injury cause of action arose before the parties separated, but the action was tried and the claim liquidated after separation. Under the Pennsylvania Divorce Code, then in effect, only property acquired before separation constituted *marital* property. 23 P.S. § 401(e) (repealed). Because Pennsylvania law generally provides that "[a] right of action strictly personal is not assignable" and the right is "not . . . a property right, capable of assignment, prior to liquidation", the court found the proceeds of the action not to be marital property. *Hurley* at 441, *quoting Sensenig v. Pa. Railroad Co.*, 229 Pa. 168, 78 A. 91, 92 (1910). In *DeMasi*, also a divorce case, the wife sought a determination that insurance proceeds acquired after separation were marital property because they were paid pursuant to a contract. The wife distinguished *Hurley*, arguing that it applied only to tort causes of action. The Superior Court agreed with the wife. Debtor's reliance on these cases is misapplied.

In 1988, § 401 of the Divorce Code was replaced by 23 Pa.C.S. § 3501(a)(8) and now provides that the relevant time for determining whether a cause of action is marital property is when the cause of action accrues. *Nuhfer v. Nuhfer*, 410 Pa.Super. 380, 599 A.2d 1348, 1349 (1991). Thus, the cases upon which Debtor relies do not reflect the current state of Pennsylvania law.

---

account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent . . ." Effective April 1, 2001, that amount increases to $17,425.00. 11 U.S.C. § 104(b). However, the lesser amount was in effect when Debtor filed this case.

7. The above cases did not determine 'what is property,' but determined 'what is *marital* property' under the Pennsylvania Divorce Code. *Hurley*, which *DeMasi* used as a basis for its decision on this point, began its analysis by asking the question: "Did the legislature intend to require that a spouse's unliquidated claim for personal injuries in tort be deemed marital property?" *Hurley* at 442.

█ Furthermore, although state law governs the nature of the interest which a taxpayer has in property, whether the right or interest created under state law constitutes "property" or a "right to property" subject to a § 6321 tax lien is a matter of federal law. *Drye Family 1995 Trust v. U.S.*, 152 F.3d 892, 894 (8th Cir. 1998), *aff'd*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). In *Simon v. Playboy Elsinore Associates*, 1991 WL 71119 (E.D.Pa.1991), an IRS lien was held to have attached to the proceeds of a personal injury action where the IRS had filed liens against the debtor's property for unpaid taxes. "[S]tate and federal courts outside of Pennsylvania have recognized that, for federal tax purposes, the right to assert a tort claim is a 'chose in action,' constituting intangible personal property subject to the federal tax lien." *Id.* at *2. Furthermore, § 541 of the Bankruptcy Code provides an extremely broad definition of property which includes Debtor's interests in causes of action. We find that the unliquidated medical malpractice cause of action is property in which the Debtor has an interest under Pennsylvania law and under the Bankruptcy Code. Thus, the tax lien attaches to the cause of action and will attach to its proceeds.

III. Pension Plan

█ Debtor relies on *U.S. v. Dallas Nat. Bank*, 152 F.2d 582 (5th Cir.1945), in support of her assertion that the IRS lien does not attach to her pension because she cannot sell her interest in it nor does she have the right to receive a distribution from it at this time. She argues in her brief that the pension is "never fully her property" until it becomes payable to her. In *Dallas Nat. Bank* the IRS sought to lien the taxpayer's interest in a testamentary trust. Under the terms of the will the taxpayer did not have legal title to the trust corpus, she had only an income

therefrom. The court held that even though the testator's intent was to create an estate immune from seizure, the IRS' lien still attached to the income to which the taxpayer was entitled at the time the income became payable to her.

This court recognized in *In re Fuller*, 204 B.R. 894, 900 (Bankr.W.D.Pa.1997), "that a federal tax lien attaches to the Debtor's right to receive future pension plan payments from an ERISA qualified plan at the time such payments are distributed or become due." The court further held: "The IRS is a secured creditor to the extent of the present value of the Debtor's right to lifetime pension benefits." *Id.* at 902.

In *In re Wesche*, 193 B.R. 76 (Bankr. M.D.Fla.1996), the debtor did not dispute that the tax lien attached to the right to receive pension benefits, but questioned the extent of the liens on those payments. The court held that the lien attached to all post-petition future payments. "The IRS claim is valued as the present value of the future payments over Debtor's lifetime." *Id.* at 79.

> [Debtor] has a present right to receive payments in the future, which is a 'right to property' to which the tax lien attaches.... The right to future benefits exists in the present, and, most importantly, existed on the date of the filing of the petition in bankruptcy. Accordingly, the federal tax lien attached to all of [Debtor's] rights in the pension benefits, including the right to future payments. The United States, thus, is secured to the extent of the present value of [Debtor's] retirement benefits.

*Id.* at 79.

The parties have stipulated that the present value of the Debtor's pension is $6,291.09. Therefore, the IRS lien at-

taches to this value for purposes of this Chapter 13.

**Conclusion**

This court finds the IRS liens attach to Debtor's personal property to the extent of her equity in same, to the value of the medical malpractice claim, and to the present value of her right to receive future payments from her pension. The IRS liens are secured to the extent of Debtor's equity in her personal property, valued at $2,630.00 and $6,291.09 in the Debtor's pension. Because the parties have stipulated as to the value of household goods as $2,630.00, this opinion assumes the IRS' lien in those assets is secured to that extent. The court will adjust the calculation, however, as explained in note 5, *supra*, if this assumption is in error. The Debtor must pay these amounts to the IRS through the plan in order to terminate the lien in those assets. Additionally, the IRS is secured in the Debtor's medical malpractice claim to the extent that she receives a damage award from the action, but not to exceed $28,437.56.[8] By agreement of the parties, the IRS' lien shall remain attached to the cause of action and shall not be paid through the Chapter 13 Plan, since its exact value cannot be determined until the Debtor's claim is liquidated.

An appropriate order will be entered.

**ORDER**

**AND NOW,** to-wit, this **12th** day of **April, 2001,** for the reasons expressed in the foregoing Memorandum Opinion,

It is **ORDERED, ADJUDGED, and DECREED** that plaintiff's Motion for Summary Judgment is **DENIED** and the Internal Revenue Service's Cross–Motion for Summary Judgment is **GRANTED.**

It is **FURTHER ORDERED** that the Internal Revenue Service's claim is secured to the extent of $6,291.09 in the Debtor's pension.

It is **FURTHER ORDERED** that the IRS's claim is secured to the extent of $2,630 in Debtor's household goods. However, within 20 days hereof the Debtor and/or the Internal Revenue Service shall file a stipulation as to the value of the IRS' secured claim in the Debtor's personal property and the value of the IRS' lien in the medical malpractice cause of action in accordance with this court's memorandum opinion. *See* notes 5 and 8 of the memorandum opinion and accompanying text therein.

It is **FURTHER ORDERED** that the Internal Revenue Service is secured in the Debtor's medical malpractice claim to the extent that she receives a damage award from the action, but not to exceed $28,437.56. This amount will be adjusted upward by any decrease in the IRS' secured claim on household goods.

It is **FURTHER ORDERED** that Debtor shall amend her Chapter 13 plan on or before **May 21, 2001,** and serve the U.S. Trustee, the Internal Revenue Service, and any other creditor affected thereby. Objections to the amended plan shall be filed and served on or before **June 11, 2001.** A conciliation conference is scheduled for **June 19, 2001,** at **9:00 a.m.** in Courtroom A, 54th Floor USX Tower, 600 Grant Street, Pittsburgh, PA. 15219. If the parties are not able to resolve the confirmation dispute, a contested hearing will be held on **June 26, 2001,** at **1:30 p.m.**

---

**8.** This figure was calculated by subtracting the IRS' security interest in Debtor's household goods ($2,630.00) and pension ($6,291.09) from the total amount of the IRS' liens ($37,988.65). This figure will be adjusted upward if the assumption as to the extent of the IRS' lien in household goods is in error. *See,* note 5, *supra.*